16L 401
3pi 406
4pi 14

SHELBY COUNTY v. MISSISSIPPI & TENNESSEE RAILROAD COMPANY.

1. ASSESSMENT. *County tax. Railroads. Omitted property.* The county trustee is the proper officer, under the act of 1879, chapter 79, and subsequent acts amendatory thereof, to assess for county taxation the property of a railroad company which the regular assessors have omitted to assess.

2. SAME. *Appeal by county. Revaluation.* If from such assessment the county asks an appeal to the chairman of the county court, that is a sufficient proceeding, under the statute, to entitle the company to a revaluation of the property before the chairman.

3. SAME. *Writ of certiorari.* And if the trustee, notwithstanding the proceeding, issue a distress warrant, or its equivalent, for the collection of the taxes, the company may take the case into the circuit court by writs of *certiorari* and *supersedeas*, and the judgment of this

26—VOL. 16.

Shelby County *v.* Railroad Company.

court sustaining the assessment but quashing the warrant would be final, requiring no remand of the cause, and only a *procedendo* to the chairman of the county court to make the revaluation.

4. SAME. *Act of* 1885, *chapter* 23. The act of 1885, chapter 23, which in substance restricts the power of tax collectors, conferred by previous acts, to assess omitted property to the three years next preceding the assessment, is not a statute of limitations, and is prospective only, not affecting assessments made before its passage.

5. SAME. *Data for taxation.* The taxes for the years ante-dating the act of 1875, and amendatory acts providing for the assessment of railroad property for purposes of taxation by a Board of State Assessors, may be assessed under the general revenue laws of the particular years, but the company, upon the revaluation by the chairman of the county court, may furnish all the data railroad companies are required to furnish the State Board.

6. SAME. *Existence of property.* It is no objection to the assessment of property as of a given date that the property has since then ceased to exist.

7. SAME. *Certiorari.* There can be no doubt of the jurisdiction of the circuit court to bring before it, by the writ of *certiorari,* the proceedings touching the collection of taxes, and thereby test the validity of a distress warrant, or the legality of its issuance; but there is grave doubt whether the writ can be resorted to merely to correct a supposed error in the valuation of property by the assessor to whom the duty is assigned by law, and the writ will not be considered as filed for any such purpose unless the case made in the petition clearly requires it.

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby county.   J. O. PIERCE, J.

HEISKELL & HEISKELL, F. T. EDMONSON and R. D. JORDAN for Shelby County.

C. F. VANCE for Railroad Company.

COOPER, J., delivered the opinion of the court.

On September 2, 1884, the trustee of Shelby county

Shelby County *v.* Railroad Company.

made an assessment of the property of the Mississippi & Tennessee Railroad Company, within the county, for the years 1866 to 1874, inclusive, for the purpose of collecting the taxes due the county for those years, the assessors of those years having omitted to make any assessment of the property for taxation, and no taxes having been paid thereon. The assessment was authorized by the act of 1883, chapter 181, which amended the act of 1879, chapter 79. These acts provide that the owner of the property thus assessed, if he disputes the assessment, may have a revaluation before the judge or chairman of the county court at any time within one month, and in such case the judge or chairman may hear proof, and fix the assessment or valuation, and the same shall be final. The railroad company did, within the thirty days, dispute the assessment of the trustee, and pray an appeal to the chairman of the county court of Shelby county, writing out its application on the paper containing the assessment. The trustee, being of opinion that he was not authorized to grant an appeal, refused the application, and handed bills or statements of the several assessments, in the nature of distress warrants, to a constable for collection. The railroad company then carried the proceedings into the circuit court by writs of *certiorari* and *supersedeas*. On final hearing, that court quashed the assessment of the trustee, upon the ground that it was not made in conformity with the law. The county appealed, and the court reversed the judgment, being of opinion that the assessment was made according to law, but quashed the distress warrants,

because the application of the company for an appeal to the chairman of the county court, although informal, was in effect a sufficient proceeding, under the statute, to entitle the company to a revaluation of its property before the chairman. The judgment was final as to all the matters of litigation under the writ of *certiorari*, and no remand of the cause to the circuit court was necessary. But a remand, in the nature of a *procedendo*, to the chairman of the county court to proceed and make the revaluation asked by the company, was proper. It is the judgment of the court as entered on its minutes, and not the opinion or memorandum of the judge who announces the result, which determines the rights of the parties, so long as it remains unaltered: *Parkes* v. *Clift*, 9 Lea, 524, 530. The memorandum in this case, for it was only a memorandum of three or four lines, directs the remand to be made to the county court, instead of the chairman of the county court. But the language used, when read by the light of the record, shows that only a *procedendo* to the chairman of the county court was intended. And so it would, undoubtedly, have been ruled, if the company had moved to correct the entry in the minutes by the memorandum of the judge.

After this decision, the parties appeared before the chairman of the county court, and the property was revalued by him, upon the proof offered, and the assessment made for the years mentioned. The company again brought the proceedings into the circuit court by the writs of *certiorari* and *supersedeas*. Upon

final hearing on the merits, "and the court being satisfied as to the insufficiency of all the allegations (of the company's petition), rules against the introduction of evidence offered by defendant to sustain the same." From this part of the judgment the company appeals. But the court being also of opinion that the right of the county to the back taxes claimed was barred by the three years limitation of the act of 1885, chapter 23, quashed the assessment. And from this part of the judgment the county appealed.

If the circuit court was right in holding that the claim of the county was barred, the case is, of course, at an end. The assessments in controversy were made by the county trustee in September, 1884, under the act of 1883, which expressly authorized them. "All collectors of taxes," says this act (brought into the new Code, section 663), "are hereby made assessors to assess all property which, by mistake of law or fact, has not been assessed, whether the omission be for the particular year for which the collector is acting, or for any previous year or years, and it is hereby made the duty of such collectors, in all cases where property has not been assessed, but on which taxes ought to be paid by law, to immediately assess the same, and proceed to collect the taxes." The Legislature of 1885 undertook to limit the right of action for taxes. By the act of 1885, chapter 24, it is provided that all taxes "that hereafter fall due" shall be barred, and any lien for such taxes be cancelled and extinguished, unless the same are collected, or suits instituted for the collection within six years from the first of Jan-

uary of the year for which such taxes accrued. By the act of 1885, chapter 86, it is provided that all taxes, "for the collection of which no suits have been commenced," shall be barred, and all liens for said taxes cancelled, unless the same are collected, or suits for the collection be instituted, first, in the case of taxes for the year 1878 and previous thereto, within one year from the passage of this act; second, in the case of taxes for the years 1879 and up to and inclusive of the year 1884, within six years from the time they fall due. It is obvious that neither of these statutes applies to the case before us. For the first act only relates to taxes "that hereafter fall due," and even if the revaluation before the chairman of the county court be treated as the commencement of the suit for the taxes in controversy, it was made on August 15, 1885, and, therefore, within one year from the passage of the last act, on March 31, 1885.

But the same Legislature also undertook, by the act of 1885, chapter 23, to amend the acts of 1879 and 1883 as brought into the new Code, sections 663, 664. The first section of the act so amends section 663 as to limit the powers of tax collectors to assess omitted property to the period of the preceding three years. The second section of the act adds to section 664 the following proviso: "Provided that no taxes on property for more than three years back shall be assessed and collected, where they have not been assessed and not paid in consequence of the errors and omissions of former collectors or assessors." A statute of limitations prescribes the time within which a per-

son having a right or demand against another shall bring his action. The statute under consideration does not undertake to limit the time within which an action for taxes shall be brought. The first two acts above mentioned were directed to that end, and are statutes of limitations. The act in question merely withdraws from all tax collectors the power, given by the act of 1883, to assess omitted property for any number of years previous to the year of assessment, and restricts the assessment to three years. By its terms, and by a well known rule of statutory construction, it is merely prospective. It does not repeal the acts of 1879 and 1883 expressly, or any thing done under them. It repeals them by implication as to future assessments by tax collectors. There is not the least intimation, in the language of the act, of a legislative intent that it should operate retrospectively, and such an intent is negatived by the two statutes of limitations passed after it at the same session. The taxes in controversy had already been assessed, and the statute in question does not apply to them.

The proviso of the statute forbids the assessment for more than three years' back, when the taxes "have not been assessed and not paid," in consequence of the errors or omissions of former collectors or assessors. The learned counsel of the company lays stress upon the words "and not paid." His point is that unless the taxes in controversy were paid before the passage of the statute in question, the assessment is subject to the three years limitation. But the statute, as we have seen, is not a limitation

of an existing right of action, but a restriction of the power of tax assessors to thereafter assess omitted property. And the words relied on were, no doubt, intended to cover the case, of which we have an instance in a noted case at Nashville, where the tax collector has collected taxes on property not assessed by the regular assessors, and failed to note or report the fact: *Mayor of Nashville* v. *Knight*, 12 Lea, 700, 709.

Even if the act in question had expressly repealed the act of 1883, the Code, section 49, has changed the common law rule as to the effect of such repeal, which rule was followed in the cases cited by the learned counsel. That section is: "The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under and by virtue of the statute repealed": *Richardson* v. *State*, 3 Cold., 122; *Hill* v. *State*, 5 Lea, 730.

The trial court was clearly in error in holding that the statute was a bar to the right of the county to collect the taxes in controversy.

The final judgment of the circuit court contains this clause: "And the court being satisfied as to the insufficiency of all the allegations (of the company's petition for *certiorari*), rules against the introduction of evidence offered by defendant to sustain the same." If the court had dismissed the petition on motion, or *mero motu*, the question before us would be on the sufficiency of the petition. But his Honor did not dismiss the petition. On the contrary, he granted re-

lief under it, by sustaining the defense set up therein of the three years bar. What he did then was to exclude offered evidence as immaterial, and strictly the company should have embodied that evidence in a bill of exceptions, so as to enable this court to determine whether or not it was properly excluded. This has not been done.

A large part of the company's petition is taken up with attacking the assessment of the trustee of Shelby county, upon the idea apparently that his assessment was still open to contest, because this court should have remanded the cause under the first *certiorari* to the circuit court, and that the remand to the chairman of the county court, or to the county court, as written in the judge's memorandum, was void. But, as we have seen, the first *certiorari* case was finally disposed of by this court, by holding that the assessment of the trustee was valid, and merely quashing the distress warrants because the company had, in effect, disputed the trustee's valuation, and was entitled to a revaluation before the chairman of the county court. The order of this court was only a *procedendo* to the proper official to proceed accordingly. There was nothing in the memorandum of opinion to authorize a change of the judgment in any respect. So much of the petition, therefore, as sought to impeach the trustee's assessment and the judgment of this court contained no merit, and was insufficient to warrant the issuance of the *certiorari*, or the introduction of proof.

The petition then sets out the revaluation of the

company's property, and is accompanied with a bill of exceptions made out by the company of the evidence upon which the chairman proceeded. The principal objection taken by the petition to the revaluation is, that it was not made with all the data, and in the mode pointed out by the act of 1875, and subsequent acts amendatory thereof, providing for the assessment of railroad property for purposes of taxation by a State Board of Assessors. But the taxes for the years in controversy antedated the first of these acts, and the property of the company, as we have expressly held, was open to assessment under the general revenue laws of those years: *Railroad Company* v. *State*, 8 Heis., 663; *State* v. *Railroad Company*, 14 Lea, 56, 63. And the company had the opportunity of furnishing any evidence it saw proper, including all the data railroad companies are required to furnish the State Board of Assessors, which might tend to show the true facts, and to enable the chairman to do his duty. Instead of doing this, the bill of exceptions shows that every obstacle possible was thrown in the way of the chairman, the company relying, not upon proof adduced by it, but upon the absence of proof supposed to be necessary. The petition, and the argument now submitted in its support, rely upon the fact that much of the personal property of the company during the particular years has since been worn out, destroyed, or otherwise disposed of. But it is no objection to an assessment of property at a given date that it has since ceased to exist. It was the duty of the company to have it assessed at

the time, and not having done so, it can not complain
if the assessor proceeds on the best evidence he can
procure, especially if the evidence be the testimony of
its own officers, or the data furnished by its own
printed reports. The same property, for the same
years, was assessed by the comptroller of the State for
State taxes, and these taxes have been paid by the
company. The chairman of the county court, with
all the light furnished by the company, if light it
could be called, found the property to be of the value
put upon it by the comptroller. And there can be
no doubt from the proof embodied in the bill of ex-
ceptions, that the valuation for the whole time is fair
and moderate.

The petition does not seek a revaluation of the
property by the circuit court, nor claim that the valua-
tion of the chairman is beyond the actual value at the
time. It does not undertake to give a value to the
property, or any data to sustain the assumption of any
particular value. It sums up its gravamen or sub-
stance thus: "Your petitioner, as advised, charges that
said alleged assessment as made by said chairman is
absolutely null and void; that he has no jurisdiction
of the same under the laws of the State; that for
the reason heretofore set forth in this petition the
same is not in conformity with law as to the mode
of arriving at the valuation of petitioner's property,
and that the same was overvalued and overestimated
in quantity and value." The prayer of the petition
is that the record, upon which the chairman proceeded,
be brought up in order that it may be determined

if his action has or has not been in conformity with law; that said proceedings be reviewed, set aside or made to conform to the law, and for such other and further proceedings as the court may order. The overvaluation complained of was not an overvaluation of the property as it was in reality, but an over-valuation upon the evidence before the chairman as embodied in the bill of exceptions, and the prayer is of a correction of that valuation upon such evidence. Neither in the body of the petition, nor in the prayer is there shown a clear intent, or in fact any intent on the part of the company to have a new valuation on new proof. The object manifestly was to review the proceedings before the chairman on the proof then adduced, under the belief that it was not in conformity with the law, and insufficient.

There can be no doubt of the jurisdiction of the circuit court to bring before it, by means of the writs of *certiorari* and *supersedeas*, the proceedings touching the collection of taxes, and thereby to test the validity of a distress warrant, or the right to issue it in the particular case: *Saunders* v. *Russell*, 10 Lea, 293, and cases cited. But there is grave doubt whether the writs can be resorted to merely to correct a supposed error in the valuation of property by the assessor or assessors appointed by law to perform that duty: *Knight, ex parte*, 3 Lea, 401; Cooley on Tax., 157, 533. The provision of the Constitution, Article 6, section 10, in relation to the writ of *certiorari*, does not apply to tax cases: *Railroad Company* v. *State*, 8 Heis., 664, 804. "As a general rule," says Mr. Cooley, at the

Shelby County *v.* Railroad Company.

page first cited, "a tax can not depend for its validity upon the ability to justify it to the satisfaction of a court or jury. Value is matter of opinion, and when the law has provided officers upon whom the duty is imposed to make it, it is the opinion of these officers to which the interests of the parties are referred. The court can not sit in judgment on their errors, nor substitute their own opinions for the conclusions the officers of the law have reached." And he adds, at the page last cited, the authorities are, "that assessments can not be revised and set aside on the writ of *certiorari*, on the ground merely that they are excessive or unequal; or that the assessors have erred in any matter of judgment, or have been guilty of irregularities in the exercise of their authority, not being of a nature to deprive them of jurisdiction, or to take from the party any substantial right." "In reviewing a tax case on *certiorari*," he also says, "the court is confined to the record of the tribunal reviewed, and extrinsic evidence can not be received to contradict or control it. If the tax is rendered illegal by facts not appearing of record, some other remedy must be sought."

Without passing upon these points, we are of opinion that the petition in this case is not so framed as to require us to look outside of the proceedings before the chairman, and that his valuation is sustained by the proof.

The judgment below will be reversed, and the petition dismissed with costs.